IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DONALD ALLEN GOSNEY,             Case No. 6:16-cv-01072-SB

         Plaintiff,                         **OPINION AND ORDER**

      v.

MICHAEL GOWER, et al.

         Defendants.

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Donald Allen Gosney ("Gosney"), an incarcerated person in the custody of the Oregon Department of Corrections ("ODOC"), brings this case against Michael Gower ("Gower") (ODOC's Assistant Director of Operations), Linda Ann Gruenwald (a nurse practitioner employed by ODOC), and other ODOC medical personnel (collectively, "Defendants"). (ECF No. 151.) Gosney alleges that Defendants violated his rights to adequate medical care and reasonable accommodations, as guaranteed by the Eighth and Fourteenth Amendments (claims one through three), and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (claims four and five). (Sec. Am. Compl. ("SAC") ¶¶ 85-109.)

On June 1, 2018, the Court granted Defendants' motion for partial summary judgment on Gosney's first three claims (for inadequate medical care). (ECF No. 156.) Defendants now move for summary judgment on Gosney's remaining (ADA) claims. (ECF No. 179.) The Court has jurisdiction over this case under 28 U.S.C. § 1331, and all parties have consented the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c). For the following reasons, the Court grants Defendants' motion for summary judgment.

## BACKGROUND[1]

On February 22, 2013, and again two weeks later, Gosney attended "sick-call" at Two Rivers Correctional Institution. He reported to ODOC medical staff that he was experiencing pain and decreased mobility in his left hip, stemming from a childhood infection. (SAC ¶¶ 4, 17, 19.) Over a year later, on May 6, 2014, Gosney attended sick-call again to report hip pain. (SAC ¶ 21.)

Gosney received an x-ray that week. (SAC ¶ 22.) Defendant Gruenwald evaluated Gosney on May 22, 2014. (Declaration of Christopher DiGiulio, Dec. 8, 2017 ("DiGiulio Decl.") ¶ 11.)[2] She prescribed a low bunk/tier/no stairs restriction for one year and pain medication. (*Id.*)

On May 27, 2014, Defendant Gruenwald recommended, and ODOC's Therapeutic Level of Care Committee ("TLOC") approved, magnetic resonance imaging (an "MRI"). (DiGiulio Decl. ¶ 12.) The test was completed two weeks later. (SAC ¶¶ 22-26; DiGiulio Decl. ¶ 13.) The MRI findings were compatible with degenerative disease. (DiGiulio Decl. ¶ 13.)

---

[1] The following facts are either undisputed or viewed in the light most favorable to Gosney, the non-moving party. See *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005).

[2] Defendants rely on DiGiulio's previously filed declaration to support their motion. (Defs.' Mot. at 2.)

PAGE 2 – OPINION AND ORDER

Defendant Gruenwald evaluated Gosney again on June 27, 2014. (*Id.* ¶ 14.) She noted his gait, his range of motion, and his reported physical activity, and she changed his prescription pain medication based on Gosney's report of continued pain. (*Id.*)

Two and a half months later, on September 13, 2014, Gosney complained that his medication was not sufficiently managing his pain. (*Id.* ¶ 15.) Defendant Gruenwald responded two days later (on a Monday), prescribing a different medication for pain and inflammation relief. (*Id.*)

On October 3, 2014, a nurse called Gosney in to check on his condition. (SAC ¶ 30; DiGiulio Decl. ¶ 16.) Gosney reported decreased mobility and increasing difficulty with daily activities, and discussed the possibility of a change in work assignment. (SAC ¶ 30; DiGiulio Decl. ¶ 16.) Early the next week, Defendant Gruenwald presented Gosney's case to the TLOC, and the TLOC approved an orthopedic consultation. (DiGiulio Decl. ¶ 17.)

Gosney met with Dr. Richard Carpenter, an orthopedic specialist, on October 27, 2014. (SAC ¶ 34; DiGiulio Decl. ¶ 18.) Defendant Gruenwald asked Dr. Carpenter to evaluate Gosney's hip and provide a treatment recommendation and a timeframe on how long "he can go for needing hip replacement." (DiGiulio Decl. ¶ 18.) In his report, Dr. Carpenter wrote, "[Gosney] suffered a hematogenous spread of a systemic infection at three years of age and now has rather significant degenerative arthritis of the left hip. Presently, he is [in great] pain[] and would like a left total hip arthroplasty." (DiGiulio Decl., Att. 1 at 39.) He explained that Gosney faced a slightly increased chance of infection with surgery, but Dr. Carpenter believed that he could perform the hip replacement safely. (*Id.*) Gosney recalls Dr. Carpenter "explaining the need for total hip replacement as soon [as] possible" during their appointment. (SAC ¶ 34.) However, Dr. Carpenter did not provide a timeframe in his report, stating only that "[t]his should

be presented to the treatment committee, and we will be happy to perform a trabecular metal in-growth prosthesis on both the acetabular and femoral side." (DiGiulio Decl., Att. 1 at 39.)

Gosney's medical record shows a notation on October 27, 2014, stating "pt returned from outside appt pink sheet returned given to provider for review." (DiGiulio Decl., Att. 1 at 15.) The following day, Defendant Gruenwald noted, "Will present to TLOC." (*Id.*)

The following week, Gosney complained of numbness in his leg. (SAC ¶ 39; DiGiulio Decl. ¶ 18.) He was provided ice, heat, ibuprofen, and relief from work duties. (SAC ¶ 40; DiGiulio Decl. ¶ 21-22.)

On November 18, 2014, Defendant Gruenwald presented Gosney's case to the TLOC and requested a prescription for pain medication. She did not request surgery. (SAC ¶ 43; DiGiulio Decl. ¶ 23.)

Defendant Gruenwald saw Gosney on December 23, 2014. (SAC ¶ 49; DiGiulio Decl. ¶ 24.) Gosney reported severe pain and inability to work. He said that his then-current prescription was somewhat, but not sufficiently, effective. (SAC ¶ 49; DiGiulio Decl. ¶ 24.) That same day, Defendant Gruenwald prepared a request for hip replacement surgery to present to the TLOC. (DiGiulio Decl. ¶ 24.) She presented the surgery request to the TLOC in mid-January 2015. (SAC ¶ 49; DiGiulio Decl. ¶ 27.) The TLOC denied the request, saying "Not at this time cont. eval monitor—post-pone as long as possible." (DiGiulio Decl., Att. 1 at 48.) Gosney was 44 years old at the time. (DiGiulio Decl. ¶ 27.)

On February 6, 2015, Gosney injured his right foot after catching himself when his left hip gave out. (SAC ¶ 57; DiGiulio Decl. ¶ 28.) He reported hip pain several times during February, and informed medical staff that the prescribed medication was providing little to no relief anymore. (SAC ¶¶ 58-65.) Gosney was provided hot packs, and an additional pain

medication to take in combination with the existing prescription. (*Id.*) Gosney reported the additional medication to be ineffective as well. (SAC ¶ 67.)

On March 13, 2015, Defendant Gruenwald saw Gosney again. (SAC ¶ 70.) She reported speaking to other prison personnel familiar with Gosney who described Gosney limping, but ambulatory and with no gait instability. (SAC ¶ 70.) She also noted Gosney's complaints about pain and the ineffectiveness of the prescribed medications. (*Id.*)

Four days later, on March 17, 2015, Defendant Gruenwald presented to the TLOC Gosney's requests for hip replacement surgery, Neurontin, and a cane. (SAC ¶ 74; Digiulio Decl. ¶ 32.) The TLOC concluded that conservative management had failed, and approved hip replacement surgery as medically necessary. (SAC ¶ 74; Digiulio Decl. ¶ 32.) The TLOC further concluded that Neurontin and a cane were not medically necessary. (SAC ¶ 74; Digiulio Decl. ¶ 32.)

ODOC provided Gosney with hip replacement surgery on April 9, 2015. (SAC ¶ 79.) Gosney is healed and physically functioning well. (DiGiulio Decl. ¶ 36.)

## ANALYSIS

### I. STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in favor of that party. *Porter*, 419 F.3d at 891 (citations omitted). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of the matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## II. DISCUSSION

In his fourth and fifth claims for relief, Gosney alleges that Defendants violated Title II of the ADA by not providing him with mobility aids to accommodate his disability. (SAC ¶¶ 102, 107.) Defendants seek summary judgment on Gosney's ADA claims on the ground that Gosney fails to state a valid claim for relief.[3] (Defs.' Reply at 4.) The Court agrees.[4]

Under 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, activities, of a public entity, or be subject to discrimination by any such entity." 42 U.S.C. § 12132. Title II defines a "qualified individual" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

---

[3] In their motion and reply, Defendants also argue that Gosney's ADA claims fail because (1) the ADA does not impose liability on state officials sued in their individual capacity; and (2) Gosney's claims are untimely. (Defs.' Mot. at 3; Defs.' Reply at 2.) Defendants now appear to acknowledge that Gosney's remaining claims are against Defendants in their official capacity, and that Gosney's claims are timely. (Defs.' Reply at 1; Defs.' Supp. Resp. at 2.)

[4] Although Defendants first raised this argument in their reply, the Court exercises its discretion to consider whether Gosney's claims state a valid claim for relief, given that Gosney's sur-response (ECF No. 193) provided an adequate opportunity to counter Defendants' new argument. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) ("[A] district court has the discretion to consider an argument first raised in a reply brief.") (citation omitted); *see also Or. Nat. Desert Ass'n v. Cain*, 17 F. Supp. 3d 1037, 1048 (D. Or. 2014) ("When a party has raised new arguments or presented new evidence in a reply to an opposition, the court may permit the other party to counter the new arguments or evidence.") (citation omitted).

"To prove that a public service or program violates Title II of the ADA, a plaintiff must show (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities or was otherwise discriminated against by the public entity; (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Olson v. Allen*, No. 3:18-cv-001208-SB, 2019 WL 1232834, at *4 (D. Or. Mar. 15, 2019) (quoting *Townsend v. Quasim*, 328 F.3d 511, 517 (9th Cir. 2003)). Furthermore, a public entity may be liable for damages under Title II "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Updike v. Multnomah Cty.*, 870 F.3d 939, 951 (9th Cir. 2017) (citation omitted). A public entity acts with deliberate indifference if it (1) has "knowledge that a harm to a federally protected right is substantially likely"; and (2) fails "to act upon that likelihood." *Id.* at 950-51 (quoting *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138-39 (9th Cir. 2001)).

Although Gosney is correct that Title II of the ADA protects prisoners from disability discrimination, Gosney has not offered any evidence demonstrating that Defendants refused to provide him with mobility aids *because* of his disability. Rather, the record reflects that Defendants denied Gosney's requests because they did not consider mobility aids "medically necessary" at the time. (DiGiulio Decl. ¶ 32.) Although Gosney may disagree with Defendants' medical opinion, it is well settled that "the ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010); *Marlor v. Madison Cty., Idaho*, 50 F. App'x 872, 873 (9th Cir. 2002) (affirming the district court's grant of summary judgment on the plaintiff's ADA claim for failure to provide medical equipment because the plaintiff "offered no comparison with other inmates' medical

care to demonstrate that he was denied access to medical supplies or treated differently *by reason of* his disability") (emphasis in original); *see also Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006) ("When the decision being challenged is simply a reasoned medical judgment with which the patient disagreed, it is more appropriate for the patient to turn to state medical malpractice law, not the ADA.") (citation, alterations, and quotation marks omitted); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (holding that a prison does not violate the ADA by "simply failing to attend to the medical needs of its disabled prisoners" because the "ADA does not create a remedy for medical malpractice").

Several other judges in this district have similarly recognized that the "ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities." *Galvin v. Cook*, No. CV 00-29-ST, 2000 WL 1520231, at *6 (D. Or. Oct. 3, 2000); *see also Ross v. Shelton*, No. 2:18-cv-00045-YY, 2019 WL 846043, at *7 (D. Or. Feb. 21, 2019) (granting summary judgment on prisoner's ADA claim, and noting that "'[w]hile evidence of discriminatory medical care can constitute a claim under the ADA, claims based solely on provision of inadequate or negligent medical care are not cognizable under the ADA'") (citation omitted); *Johnson v. Westermeyer*, No. 3:11-cv-00514-ST, 2014 WL 2807667, at *8 (D. Or. June 19, 2014) (adopting magistrate judge's recommendation to enter summary judgment on ADA claim because the plaintiff's "allegations of inadequate medical care do not evidence discrimination"); *Callaway v. Shelton*, No. 2:11-cv-00885-TC, 2014 WL 325643, at *4 (D. Or. Jan. 28, 2014) ("In this case, plaintiff only alleges that he is being denied adequate medical care—not that medical care is being withheld by reason of his disability. Therefore, defendants are entitled to judgment as a matter of

law as to plaintiff['s] claim under the ADA."); *Rockwell v. Oregon*, No. 05-cv-694-BR, 2007 WL 2819090, at *4 (D. Or. Sept. 24, 2007) ("Here as in [three prior District of Oregon cases], Plaintiffs' claims arise from the alleged inadequacy of medical treatment they received in various ODOC institutions and are not the types of claims the ADA was intended to address.").

Accordingly, the Court grants Defendants' motion for summary judgment on Gosney's ADA claims.[5]

## CONCLUSION

For the reasons stated, the Court GRANTS Defendants' motion for summary judgment. (ECF No. 179.)

**IT IS SO ORDERED.**

DATED this 1st day of April, 2019.

_____
STACIE F. BECKERMAN
United States Magistrate Judge

---

[5] Gosney's SAC contains references to Or. Rev. Stat. § 659A.142. (SAC ¶¶ 104, 109.) To the extent that Gosney alleges claims under this statute, the Court finds that they fail for the same reasons as Gosney's ADA claims. *See A.F. v. Starbucks Corp.*, No. 3:17-cv-1582-SI, 2018 WL 1161385, at *2 (D. Or. Mar. 5, 2018) ("By statute, ORS § 659A.142 'shall be construed to the extent possible in a manner that is consistent with any similar provisions of the federal ADA.'") (quoting Or. Rev. Stat. § 659A.139(1) (alterations omitted)); *Davis v. Con-Way Freight Inc.*, 139 F. Supp. 3d 1224, 1231 n.4 (D. Or. 2015) ("The Oregon disability discrimination statute is modeled after the ADA. Accordingly, courts interpret the statute consistently with the ADA.") (citation and alteration omitted).